IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM SIMMONS,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>RAY BERNARDI, WYOMING AREA SCHOOL DISTRICT, WYOMING AREA SCHOOL BOARD, ANTONINETTE VALENTI, JOHN LANUNZIATA, NICK DEANGELO, JOHN BOLIN, JERRY WALL, JOHN MARIANACCI, DAVID ALBERIGL, SAMUEL ARITZ, and DR. ESTELL CAMPENNI,<br><br>　　Defendants. | CIVIL ACTION NO. 3:10-CV-194<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is Defendants' Motion for Summary Judgment. (Doc. 24). Plaintiff William Simmons claims retaliation by his employer, the Wyoming Area School District, in violation of his First Amendment rights to petition for redress of grievances and to association. In their Motion, the Defendants claim that Simmons has failed to produce evidence that could support such a claim. For the reasons below, the Court will deny Defendants' Motion as to Defendant Bernardi, but will grant it in respect to the School Board and the individual Board Member Defendants.

## BACKGROUND

Simmons was originally hired by the Wyoming Area School District ("WASD") as a janitor in 1997, and became the Union President in 1999. In 2000, he was promoted to

Maintenance Foreman of the School District where he reported directly to the WASD Superintendent, who was, at all relevant times, Defendant Ray Bernardi ("Bernardi"). In a letter dated November 20, 2007, Simmons tendered his resignation to the WASD, (Pls.' Ex. 1). In his letter, Plaintiff premised his resignation on a pattern of debilitating harassment by Defendant Ray Bernardi, which Plaintiff attributed to his political affiliations. (*Id.*). Simmons withdrew his letter in writing on December 6, 2007. (Pls.' Ex. 2). However, Simmons never returned to work, and the Board Members informed him in a December 21, 2007 letter that disciplinary action was being initiated against him for insubordination and dereliction of duty. (Pls.' Ex. 4). Also on December 21, 2007, Plaintiff's Union attorney wrote to Superintendent Bernardi, informing him that Plaintiff was ready and able to return to work. (Pls.' Ex. 5).

In a January 24, 2008 letter, the School District terminated Simmons for failing to show up at work and for statements regarding Defendant Bernardi contained within his original resignation letter. Simmons filed a grievance as to his termination, which was sustained at arbitration, and he was reinstated at full back pay.

Plaintiff filed this action in the United States District Court for the Middle District of Pennsylvania on January 25, 2010. (Compl., Doc. 1). He alleged retaliatory conduct on behalf of all Defendants in violation of his First Amendment rights to petition for redress of grievances and to association. Plaintiff also alleged a cause of action for violation of his rights under the Fourteenth Amendment Substantive Due Process Clause. On April 19, 2010, the Defendants filed a Motion to Dismiss Simmons's claims in full. (Doc. 4). In a July 15 Order, the Court granted in part and denied in part the Defendants' Motion, dismissing Simmons's Fourth Amendment Substantive Due Process claim. (Doc. 8). The only issue remaining before the Court is Plaintiff's First Amendment retaliation claim. This motion has

been briefed by both sides and is now ripe for disposition.

## **LEGAL STANDARD**

### **I. Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is

required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**I. First Amendment Retaliation Claim**

A Section 1983 claim provides redress for individuals whose constitutional rights are

4

violated by governmental actors.[1]  Specifically, Simmons brings his § 1983 claim under the First Amendment, which "prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

Where such retaliatory actions are alleged, a plaintiff must establish: (a) the existence of an activity protected by the First Amendment; (b) retaliatory action by a defendant that would be "sufficient to deter a person of ordinary firmness from exercising his or her rights"; and (c) a "causal connection between the protected activity and the retaliatory action." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Once these elements are established, a defendant may still prevail if they can demonstrate that the supposed retaliatory action would have occurred even in the absence of the protected activity.  *Id.* While the existence of a protected activity is a question of law, the remaining questions are questions of fact.  *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004).

Plaintiff alleges that he was retaliated against as a result of his speech (Compl. at ¶¶ 27, 34, Doc. 1), and as a result of his political association with Patrick J. Pribula, an adversary of Bernardi,[2] (*Id.* at ¶ 14).  The Defendants do not contest that Simmons's speech and affiliations constituted protected conduct under the law.  (Defs.' Br. at 9, Doc. 25).

---

[1] 42 U.S.C. § 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[2] To clarify, Plaintiff believes that Bernardi hated Pribula, and that his political association with Pribula "caused a lot of difficulties."  Simmons Dep. 42:21-24, 44:1-14, June 20, 2011, Pls.' Ex. 13, Doc. 28-2.   Apparently, Simmons and Pribula were members of the same political party.  *Id.* at 44:10.  However, while Bernardi was not in the opposite party *per se*, Simmons and Pribula were connected to, and supported, school board candidates who were in power and who were disfavored by Bernardi.  *Id.* at 45:6-46:13.

Instead, they argue that Simmons "failed to adduce evidence to show retaliatory conduct by any Defendant, and did not set forth any evidence to satisfy the requisite causal connection between the alleged retaliatory conduct and the protected activity that is required for recovery." (*Id.* at 9-10). The Court will consider these arguments in turn.

## II. Sufficient Retaliatory Actions

In order to sustain a claim for First Amendment retaliation, there must be some purported retaliatory action that would be "sufficient to deter a person of ordinary firmness from exercising his or her rights." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see also Crawford-El v. Britton*, 523 U.S. 574, 589 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."). The Defendants first argue that discipline which has been rescinded cannot serve as the basis of an adverse employment action. This appears to be a true statement of law within the Fifth Circuit. *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000). As such, Defendants specifically contend that since "any and all discipline imposed upon Plaintiff by the School District was rescinded, such action in a legal sense, never occurred." (Defs.' Br. at 11, Doc. 25). They also point to Simmons's failure to seek "back pay, benefits, reinstatement, or any other employment related award, such as seniority, vacation or sick time, or a promotion or salary increased [sic] that was due and owing to him" as evidence of a lack of resounding harm. (Defs.' Br. at 12-13, Doc. 25).

The Court does not agree as the Third Circuit Court of Appeals has not articulated such a limitation on retaliatory conduct.[3] While it is true that the law of this Circuit requires

---

[3]District Court cases within this Circuit have, however, found as much in the context of Title VII claims where the adverse actions were unequivocally remedied. *See e.g. St.*

some sort of adverse employment action, the Court declines to adopt the Defendants' "no harm, no foul" logic. Therefore, the Court cannot say that this element of Plaintiff's claim has not been met as a matter of law where the discipline metered out by the School Board was later undone with Plaintiff's reinstatement. Moreover, as elaborated below, the Court also cannot hold that all of the harms Simmons complains of have been completely remedied.

Secondly, the Defendants allege that the record contains no evidence from which a reasonable jury could conclude that adverse employment actions were taken. They aver that Simmons has "set forth nothing more than criticism and/or verbal reprimands of his job performance, and, at worst, possible false accusations of poor work performance by his immediate supervisor, the Superintendent." (Defs.' Br. at 12, Doc. 25).

"Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Such acts must amount to something "more than *de minimis* or trivial." *Id.* (also quoting *Suarez*). Specifically, *Brennan* noted that "[other] courts have declined to find that an employer's actions have adversely

---

*John v. Potter*, Civil Action No. 09–4196, 2011 WL 780685 at *9 (E.D. Pa. Mar. 4, 2011) (finding no retaliation under Title VII where plaintiff was possibly suspended for fifteen minutes and "Defendant rescinded the leave order before Plaintiff was subject to any economic burden or uncertainty."); *Wormack v. Shinseki*, Civ. A. No. 2:09–cv–9162010, WL 4052189 at *4 (W.D. Pa. Oct. 14, 2010) (finding that "a rescinded or unenforced employment decision does not rise to the level of an actionable adverse employment action unless and until there is a 'tangible change in the duties or working conditions constituting a material employment disadvantage.'") (citing *Gonzalez v. Potter*, Civ. A. No. 09–0534, 2010 WL 2196287 at *6 (W.D. Pa. June 1, 2010)).

affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id.* at 419. From this, *Brennan* determined that failing to use a plaintiff's proper title or neglecting to capitalize the plaintiff's name in memoranda were *de minimis* actions which did not rise to the level of a substantive constitutional violation. *Id.* Yet, the *Brennan* court went on to note that:

> We do not suggest, however, that some of these same wrongs can never support a cause of action under § 1983. Moreover, we think it important to note that a plaintiff may be able to establish liability under § 1983 based upon a continuing course of conduct even though some or all of the conduct complained of would be *de minimis* by itself or if viewed in isolation.

*Id.* at 419 n.16.

In his deposition, Plaintiff cites the following facts to support a course of conduct of retaliatory action. First, Simmons was assigned tasks that were "impossible to complete." Simmons Dep. 25:2-3, June 20, 2011, Pls.' Ex. 13, Doc. 28-2. These impossible tasks included an order from Bernardi that Simmons singularly build a new boardroom, install three basketball poles with no power driven auger, and spread fifteen tons of mulch on a playground within only a week or two. *Id.* at 25:12-28:17, 58:4-15. Subsequently, on November 17, 2006, Simmons was called into a meeting with Bernardi and school board members present where he was criticized for failing to complete those jobs in time. *Id.* at 37:13-22, 40:9-15. Specifically, he "was treated in a harsh fashion with numerous directives including how to do his work, how to do certain jobs, and certain administrative demands." (Compl. at ¶ 14). They also moved Plaintiff to the "night shift," changing his hours from 6:30 a.m. to 3:00 p.m. to 11:00 am to 7:30 p.m. Simmons Dep. at 34:16-35:8. Further, Simmons was written up for improperly salting sidewalks, both under and over salting them, as well as improper plowing–all of which were overturned in grievances. *Id.* at 35:22-36:20.

Bernardi was also not very "professional" towards Simmons, grilling him about the what, why, and how of his work. *Id.* at 50:6-52:1. On multiple occasions Bernardi was generally unfriendly towards Simmons, refusing to talk to him and ordering him to return to work once his lunch break was over. *Id.* at 52:15-53:3. Finally, Bernardi ordered Simmons not to leave personalized services stickers on the items he serviced, directing him never to put his name on any equipment in the school district, contrary to common practice. *Id.* at 47:1-48-24. Plaintiff believes this directive was designed to undermine his credibility in having completed his assigned tasks. *Id.* at 48:1-6. All of these actions culminated in extreme anxiety that ultimately caused Simmons to tender his resignation. (Pls.' Ex. 1, Doc. 28-1).

The Court disagrees with Defendants' assertion that the above-listed examples comprise nothing more than mere accusations and criticism. Though perhaps each *de minimis* in isolation, the Court finds these allegations of fact, in the aggregate, are sufficient to sustain a claim of a continuing course of prohibited conduct. Unlike *Brennan*, these examples tend to indicate more than "false accusations," but raise a material question as to whether an overall pattern of harassment existed. Bearing in mind that this specific determination is ultimately a question of fact, the Court declines to find that Plaintiff has not shown specific facts that would allow a reasonable jury to find in his favor on the issue of adverse employment action.

**III. Causal Connection Between the Protected Activity and the Retaliatory Action**

Defendants argue that Simmons has not shown that Bernardi, the Board, or any of its individual members, acted to violate Simmons's rights.

Causation may be proved in various ways. A showing of "unusually

> suggestive" temporal proximity between the protected activity and the adverse action can be sufficient. A plaintiff also can prove causation, despite a lack of suspicious temporal proximity, by coming forward with evidence of a pattern of antagonistic conduct against the plaintiff subsequent to his protected conduct. Lastly, the plaintiff can seek to prove causation by pointing to the record as a whole for evidence that suggests causation.

*Schlegel v. Koteski*, 307 Fed. Appx. 657, 661-62 (3d. Cir. 2009) (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). The sufficiency of such evidence is ultimately a question for the fact-finder. *San Filippo v. Bongiovanni*, 30 F.3d 424, 446 (3d Cir. 1994).

### 1. Defendant Bernardi

Plaintiff admits that Defendant Bernardi's knowledge of his protected political activities is based upon Plaintiff's own assumption. Simmons Dep. 45:23-46:6. Specifically, while Simmons admits that the two never spoke about political affiliations, he testified that Bernardi would have known about his political associations "[p]robably through the rallies we attended together [] at the same time." *Id.* at 45:20-22, 45:5-8. Simmons additionally argues that "it is common knowledge in the small town of Pittston and West Pittston that political endorsements and support come in many different ways, such as yard signs, endorsement letters, financial campaign assistance, and generally voicing support for particular candidates." (Pls.' Br. at 4, Doc. 27). Conversely, Bernardi denies this imputed knowledge, stating that he had no knowledge as to any of Simmons's political support, or the location of his home. Bernardi Dep. 73:1-14, July 13, 2011, Pls.' Ex. 14, Doc. 28-3.

However, in reviewing these competing statements of fact, the Court ultimately determines that there exists a genuine question of fact as to whether Bernardi was aware

of Simmons's protected conduct. Simmons's sworn testimony is sufficient to raise a material question as to whether the retaliatory acts allegedly perpetuated by Defendant Bernardi were made in retaliation for Simmons's protected activities. Thus, the Court will decline to grant summary judgment in favor of Bernardi.

**2. The Individual School Board Members**

Simmons admits that he has no concrete evidence that the Board members, when voting to terminate him, had any knowledge that they were violating his rights, and admits that his concerns rested primarily with Bernardi. Simmons Dep. 86:3-9, 95:7-21, June 20, 2011, Pls.' Ex. 13, Doc. 28-2. Instead, in implicating the Board, Simmons relies heavily on the fact that all of the named Board Members "voted in the affirmative when asked in January, 2008 whether or not to terminate Plaintiff." (Pls.' Br. at 5, Doc. 27). From this lack of evidence in the record, the Court cannot find the requisite casual connection between the alleged retaliatory conduct–the voting to terminate Plaintiff on January 24, 2008–and the protected action–his support for the opposition candidates in the June 2007 primaries.

The record before the Court contains no evidence that the board or its individual members were aware of Simmons having exercised his constitutional rights. Instead, in the absence of any such concrete evidence, Plaintiff's brief cites the "unusually suggestive temporal proximity" between the contentious primaries in June of 2007 where Simmons supported candidates that ultimately lost to the named Defendants, and the Board's vote to fire him on January 24, 2008. (Pls.' Br. at 11, 14). The Court does not find this timing alone sufficiently suggestive, and notes that such timing would also support the Board's purported reason for the firing–Simmon's November 30, 2007 resignation letter.

This determination is bolstered by Plaintiff's suggestion in his brief that nepotism may

11

also have played an independent role in the Board's decision to fire him. (Pls.' Br. at 5, Doc. 27). Though the Court need not address the existence of nepotism in a First Amendment retaliation matter, this proffered explanation undermines Plaintiff's contention that he was dismissed in retaliation for exercising his constitutional rights. In light of this, and the dearth of affirmative facts, the Court declines to adopt Plaintiffs conclusory assertion that the Board members necessarily harbored ill-will towards Plaintiff due to his protected activities.

Therefore, as there are no facts in the record that tend to indicate that the Board's decision was informed or motivated by a desire to retaliate against Simmons's protected conduct, the Court must find in favor of the individual Board Member Defendants on summary judgment.

### 3. The School Board

Plaintiff's claims against the School Board must sound under *Monell* as municipalities and other local government units cannot be held liable under § 1983 on a theory of *respondeat superior*. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Specifically, under § 1983, it is only when an injury is consummated by a government's policy or custom that it can be held responsible. *Id.* at 694 ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Of course, a plaintiff must also demonstrate that the underlying policymaker is actually "responsible by action or acquiescence for the policy or custom." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citing *Andrews v. Philadelphia*, 895 F.2d

1469, 1480 (3d Cir. 1990)). While this requires "a deliberate choice to follow a course of action," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), "at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citing *San Filippo v. Bongiovanni*, 30 F.3d 424, 445 (3d Cir. 1994)). As to individual defendants, such "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. Pa. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. Pa. 1988)).

In a highly analogous situation, the Third Circuit held in *San Filippo v. Bongiovanni* that a university's board of governors could not be liable for failure to investigate or even negligence as to any improper motivations underlying their adverse employment decision. 30 F.3d 424, 446 (3d Cir. 1994). However, in that particular case, the Third Circuit found sufficient evidence that the board had reason to suspect First Amendment retaliatory motives were at work, specifically the magistrate judge's initial determination that the record was full of evidence that "San Filippo's protected activities was well known to the individual members of the Board." *Id.*

Contrary to *San Filippo*, there is no such evidence in the instant case, and the claim against the School Board must be dismissed. As noted above, there is no evidence in the record that the individual board members acted with any deliberate indifference as to Plaintiff's First Amendment rights. Therefore, the Court must also grant summary judgment in favor of the Wyoming Area School Board.

## **CONCLUSION**

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment as to the Wyoming Area School Board and its members, Antoninette Valenti, John Lanunziata, Nick Deangelo, John Bolin, Jerry Wall, John Marianacci, David Alberigl, Samuel Aritz, and Dr. Estell Campenni for a lack of evidence imputing a connection between the negative employment action they took against Plaintiff and Plaintiff's protected conduct. However, the Court will deny Defendant's Motion for Summary Judgment with respect to Defendant Ray Bernardi.

An appropriate order follows.

| | |
|---|---|
| January 11, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM SIMMONS, | CIVIL ACTION NO. 3:10-CV-194 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| RAY BERNARDI, WYOMING AREA SCHOOL DISTRICT, WYOMING AREA SCHOOL BOARD, ANTONINETTE VALENTI, JOHN LANUNZIATA, NICK DEANGELO, JOHN BOLIN, JERRY WALL, JOHN MARIANACCI, DAVID ALBERIGL, SAMUEL ARITZ, and DR. ESTELL CAMPENNI, | |
| Defendants. | |

## ORDER

**NOW**, this 11th day of January, 2012, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED** as to Defendants Wyoming Area School Board, Antoninette Valenti, John Lanunziata, Nick Deangelo, John Bolin, Jerry Wall, John Marianacci, David Alberigl, Samuel Aritz, and Dr. Estell Campenni.

2. Defendant's Motion for Summary Judgment is **DENIED** in respect to Defendant Ray Bernardi.

3. Defendant Campenni's Motion to Dismiss (Doc. 21) is deemed **MOOT**.

    /s/ A. Richard Caputo
    A. Richard Caputo
    United States District Judge